U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 JUN -2 PM 4:02

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KAREN B., )
 )
    Plaintiff, )
 )
v. ) Case No. 2:20-cv-00208
 )
COMMISSIONER OF SOCIAL SECURITY, )
 )
    Defendant. )

**OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER, DENYING THE COMMISSIONER'S MOTION TO AFFIRM, AND REMANDING FOR FURTHER PROCEEDINGS**
(Docs. 9 & 10)

Plaintiff Karen Brown ("Plaintiff") is a claimant for Social Security Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA") and brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security Commissioner (the "Commissioner") that she is not disabled.[1] (Doc. 9.) The Commissioner moves to affirm. (Doc. 10.) Plaintiff replied on October 12, 2021, at which time the court took the pending motions under advisement.

After Plaintiff's application for DIB was denied initially and on reconsideration by the Social Security Administration, Administrative Law Judge ("ALJ") Dory Sutker found Plaintiff ineligible for benefits because she could perform jobs that exist in significant numbers in the national economy and was therefore not disabled between the

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

alleged onset date of March 2, 2018 through November 21, 2019, the date of the ALJ's decision.

Plaintiff identifies three errors in the disability determination: (1) the ALJ did not follow the proper procedure for deciding between equally persuasive medical opinions; (2) the ALJ inappropriately inserted her own lay opinion in lieu of medical opinions; and (3) substantial evidence does not support the ALJ's reasons for ascribing lesser weight to Plaintiff's psychotherapist's opinion. Plaintiff seeks a remand for a redetermination of her DIB claim.

Plaintiff is represented by Craig A. Jarvis, Esq. Special Assistant United States Attorney Daniel S. Tarabelli represents the Commissioner.

## I.  Procedural History.

Plaintiff completed her initial application for DIB on May 2, 2018, alleging the following impairments: "[b]lind or low vision[,]" chronic headaches, chronic uveitis with severe photophobia, angle closure glaucoma in both eyes, agoraphobia with panic disorder, anxiety disorder, and Lyme disease. (AR 179.) Her claim was denied on July 27, 2018 and was denied upon reconsideration on September 11, 2018. Plaintiff filed a request for a hearing, which was held before ALJ Sutker via videoconference on October 16, 2019 at which Plaintiff and Vocational Expert ("VE") Dennis King testified.

On November 21, 2019, ALJ Sutker issued an unfavorable decision. Plaintiff timely filed an administrative appeal. The Appeals Council denied review on October 13, 2020. As a result, the ALJ's disability determination stands as the Commissioner's final decision.

## II.  ALJ Sutker's November 21, 2019 Decision.

In order to receive DIB under the SSA, a claimant must be disabled on or before the claimant's date last insured. A five-step, sequential-evaluation framework determines whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a

2

"residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citation omitted). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (alterations in original) (internal quotation marks omitted).

At Step One, ALJ Sutker found Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At Step Two, she concluded Plaintiff had the following severe impairments: glaucoma, uveitis, scleritis, iritis, iridocyclitis, pseudophakia, Adies tonic pupil, photophobia, headaches, tremor, Lyme disease, anxiety disorder, agoraphobia with panic disorder, alcohol-induced anxiety disorder, and major depressive disorder.

At Step Three, ALJ Sutker found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. The ALJ found that Plaintiff's ocular impairments did not meet Listings 2.02, 2.03, or 2.04 because "the requisite diagnostic test results with respect to the vision in her better eye" were not in the record. (AR 13.) The ALJ noted that while there is no specific Listing for headaches, she considered the Listings for migraines and determined "the most closely analogous listed impairment is dyscognitive seizure" which Plaintiff did not exhibit based on the alleged frequency of her headaches and the lack of a detailed description of a seizure in the record. *Id.* The ALJ further noted that while there is no specific Listing for tremor or Lyme disease, she evaluated those impairments "by

3

reference to their effect on other body systems" and found "no evidence in the medical file of a specific body system so affected as to meet a [L]isting in the instant case." *Id.*

With regard to Plaintiff's mental health conditions, the ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing herself. With regard to the latter, the ALJ noted that Plaintiff lives alone and is independent in her daily activities, "even as she shops in stores with anxiety[.]" *Id.* at 14. The ALJ found that Plaintiff had moderate to marked limitations in interacting with others. While the record "reflect[ed] agoraphobia" and Plaintiff "report[ed] significant difficulty leaving her house[,]" the ALJ declined to find an extreme limitation as "the record indicates that [Plaintiff] is able to leave her house when she needs to and has made significant progress" such as going to the mall and grocery shopping. *Id.* at 13.

The ALJ concluded that the "'paragraph B'" criteria regarding mental disorders were not satisfied because Plaintiff does not have at least two marked limitations or one extreme limitation. *Id.* at 14. She also found that the "'paragraph C'" criteria regarding mental disorders were not present because the record did not establish that Plaintiff had "minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." *Id.* In making this determination, the ALJ stated that Plaintiff "has been able to keep up with her changing medical condition via making and keeping the appropriate doctor['s] appointments . . . even as she missed some psychiatric appointments." *Id.*

At Step Four, ALJ Sutker determined Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following non-exertional limitations. She can never have exposure to hazards, such as unprotected heights or dangerous moving machinery. She must work in an indoor environment and can never engage in tasks that require very precise fingering such as working with microchips. She needs an environment where wearing sunglasses would not interfere with her ability to perform tasks. She can have incidental contact with the public, defined as dealing with the public but not being part of job duties. She can have brief

encounters with the public, such as passing someone in a hallway. She needs an environment where tasks are generally performed in a solitary manner but can tolerate tandem tasks up to 10 percent of a workday. Within such a setting, she can engage in brief and occasional interaction with coworkers and supervisors.

*Id.* at 14.

In light of Plaintiff's RFC, the ALJ concluded Plaintiff could not perform her past relevant work as an administrative assistant or medical assistant. The ALJ noted that Plaintiff was fifty-two years old, making her "an individual closely approaching advanced age" and that Plaintiff had "at least a high school education" and was able to communicate in English. *Id.* at 24.

Considering Plaintiff's age, education, work experience, and RFC, and based on the testimony of the VE, ALJ Sutker determined at Step Five that jobs exist in significant numbers in the national economy which Plaintiff could perform, including janitor, order picker, dining room attendant, housekeeper, laundry worker, and garment sorter. As a result, the ALJ concluded Plaintiff was not disabled from March 2, 2018, through November 21, 2019, the date of the Commissioner's final decision.

### III.   Conclusions of Law and Analysis.

#### A.   Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).

It is the Commissioner who resolves evidentiary conflicts, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v. Sec'y, Dep't of Health & Hum. Servs. of U.S.*, 728

F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision if it is supported by substantial evidence and if the proper legal principles have been applied. *See* 42 U.S.C. § 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

### B. Whether the ALJ Erred in Assessing the Medical Opinions.

Plaintiff asserts that ALJ Sutker did not "follow[] the proper regulatory procedure for choosing between medical opinions that are equally persuasive[.]" (Doc. 9 at 3.) An ALJ must consider all medical opinions or prior administrative medical findings in the record. 20 C.F.R. § 416.920c(a). For claims filed on or after March 27, 2017, an ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* Instead, an ALJ must consider each medical opinion or prior administrative finding in the record and evaluate its persuasiveness in accordance with five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including: (i) length of treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of treatment relationship, (v) examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *See id.* § 404.1520c(c).

The revised regulations state that "the most important factors [an ALJ] consider[s]" when determining persuasiveness of a medical opinion are supportability and consistency. *Id.* § 404.1520c(b)(2). An ALJ must therefore articulate how he or she considered the supportability and consistency factors for a medical opinion, and may, but need not, address the remaining three factors. *Id.* If an ALJ finds that two or more medical opinions about the same issue are *equally well-supported and consistent with the record*, the ALJ must articulate how he or she evaluated the remaining three factors. *Id.* § 404.1520c(b)(3) (emphasis supplied).

Plaintiff contends that because ALJ Sutker found the opinions of Ms. Nina Gaby,

6

APRN-PMH, a treating psychiatric nurse, and Drs. Eric Jensen, PhD, and Thomas Reilly, PhD, both state agency consultants, all "somewhat persuasive[,]" she effectively found they were "equally well-supported and consistent with the record" and was thus required to evaluate the remaining § 404.1520c(c) factors. However, the ALJ did not actually make that finding. Other courts have determined that where an ALJ deems medical opinions "unsupported and/or inconsistent" with the record, the ALJ has "satisfied any obligation to explain why any limitations from that opinion were not incorporated into the ultimate RFC finding[.]" *Serowski v. Comm'r of Soc. Sec.*, 2020 WL 6383187, at *12 (N.D. Ohio Oct. 30, 2020). In this case, it remains unclear whether the ALJ considered the "somewhat persuasive" medical opinions to be equally well-supported and consistent with the record or whether she merely found certain aspects of them persuasive while rejecting other aspects.

For example, the ALJ determined that Nurse Gaby's opinion regarding Plaintiff's marked limitation in interaction with others and mild limitation in understanding, remembering, or applying information was "somewhat consistent" with the medical record which "reflects clinical observations of intact thought process but struggles with agoraphobia." (AR 21.) ALJ Sutker observed that "[n]onetheless, [Plaintiff] is able to leave her house and go to the grocery [store], pharmacy, and medical appointments." *Id.* The ALJ also determined Nurse Gaby's opinion that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace and adapting and managing herself was "inconsistent with the record" because it "does not reflect clinical observations that could support such finding, and [because Plaintiff] lives alone and does not have help with daily activities." *Id.* at 21-22. With regard to these aspects of the ALJ's evaluation of opinion evidence, the court can easily follow her rationale.

Without explanation or analysis, however, the ALJ further observed that Nurse Gaby opined "the claimant would be off task for a significant but unspecified amount of time during the workday, and would be absent for an unspecified number of days per month." *Id.* at 21. Nurse Gaby was unable to render an opinion as to the exact amount of time Plaintiff would be off task or absent. The ALJ did not clarify whether she deemed

7

this portion of Nurse Gaby's opinion persuasive or whether she found it unsupported by the record. She also did not address Nurse Gaby's conclusion that Plaintiff's agoraphobia constituted a "severe psychiatric impairment[.]" *Id.* at 610. The ALJ's failure to accept or reject these aspects of Nurse Gaby's opinion is not harmless because the VE testified that two unscheduled absences from work per month "on a regular basis" would exceed the customary tolerance for absenteeism and that off-task behavior for "at least 15 percent of . . . the workday" could render Plaintiff "unemployable from any competitive work." *Id.* at 68.

Similarly, the ALJ concluded that Plaintiff had greater limitations with regard to social interactions than determined by the state agency consultants due to Plaintiff's agoraphobia,[2] but did not address time off task and absenteeism, which may prove dispositive to Plaintiff's disability claim. *See Beck v. Colvin*, 2013 WL 5533571, at *6 (W.D.N.Y. Oct. 7, 2013) ("Vocational experts in Social Security cases have testified that missing three or more days of work per month renders a claimant unemployable, as that level of absenteeism is beyond the bounds of reasonable employer tolerance.") (citation omitted); *Edwards v. Comm'r of Soc. Sec.*, 2020 WL 4784583, at *4 (W.D.N.Y. Aug. 18, 2020) (observing that "[t]he percent of off-task time was absolutely critical to the disability determination" where a VE testified that if a plaintiff's time off task was ten percent or more, such limitation would be "work preclusive") (internal quotation marks and citation omitted).

Because the court cannot determine whether the ALJ rejected evidence regarding time off task and absenteeism, it cannot conclude that the proper legal standards were

---

[2] ALJ Sutker determined that the opinions of the state agency consultants, both of whom opined that Plaintiff had a moderate limitation in interacting with others, were "generally consistent" with the record. (AR 22.) The ALJ noted that Dr. Jensen "opined that the claimant had moderate limitation[s] in interacting with others but no more than [a] mild limitation in any other 'paragraph B' areas of function." *Id.* He concluded that Plaintiff "retains minimum requisite tolerance for brief and episodic social contacts with coworkers and supervisors" but that she "[s]hould be restricted from direct contact with [the] public." *Id.* at 79. Dr. Reilly reached the same conclusion regarding Plaintiff's limitations. *Id.* at 93. Neither Dr. Reilly nor Dr. Jensen opined regarding how often Plaintiff would be off task or absent from work.

followed. On this basis alone, a remand is required. *See Quinones on Behalf of Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997) ("As the ALJ did not address this evidence, we think it best to remand the case so that [the ALJ] can consider in the first instance what weight to accord it.").

The ALJ also stated that Plaintiff suffers from alcohol-induced anxiety disorder but "acknowledge[d] the claimant's report that alcohol was not the source of symptomology and that she [did] not driv[e] while intoxicated." (AR 21.) The parties dispute whether the ALJ found that Plaintiff suffers from a substance abuse disorder and whether the ALJ conducted a drug addiction and alcoholism ("DAA") analysis. *See* 20 C.F.R. § 404.1535. "An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

Because "[i]t is the rule in our circuit that the . . . ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding[,]" *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (internal quotation marks and alterations omitted), an ALJ may not merely allude to a claimant's alleged substance abuse and its impact, if any, on the disability determination, she must develop the record with regard to it. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (observing that an ALJ has an obligation to develop the record because "of the non-adversarial nature of . . . benefits proceedings"); *Echevarria v. Sec'y of Health & Hum. Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (noting that "the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record"). "This duty exists even when the claimant is represented by counsel[,]" *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996), because an ALJ has an independent duty to resolve "gaps in the administrative record[.]" *Hankerson v. Harris*, 636 F.2d 893, 897 (2d Cir. 1980) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).

"The key factor [the Commissioner] will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether [the Commissioner] would still find [a claimant] disabled if [he or she]

stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). In performing such analysis, a threshold inquiry is whether a claimant has a drug addiction or alcoholism. *See* SSR 13-2p(5)(b)(1), 2013 WL 621536, at *5. In this case, that threshold inquiry was not adequately undertaken. Accordingly, the ALJ must develop the record on this issue on remand and explain its impact, if any, on the disability determination.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse the decision of the Commissioner (Doc. 9) is GRANTED, the Commissioner's motion to affirm (Doc. 10) is DENIED, and the case is REMANDED for proceedings consistent with this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 2nd day of June, 2022.

Christina Reiss, District Judge
United States District Court